Case 1:19-cr-00245-TJM   Document 35   Filed 05/11/20   Page 1 of 9

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAY 11 2020
AT____ O'CLOCK____
John M. Domurad, Clerk - Albany

IN THE Northern DISTRICT OF: New York

Kyle J. Caton,
 Petitioner,

v.

UNITED STATES OF AMERICA,
 Respondent,

JUDGE: HONORABLE McAvoy

CASE NO: DNYN119CR000245-001

EMERGENCY MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO
18 U.S.C. §3582(c)(1)(A)(i)

TO THE HONORABLE JUDGE OF THE DISTRICT COURT OF: Northern New York

COMES NOW, Kyle Joshua Caton, THE PETITIONER, ACTING PRO SE, AND RESPECTFULLY MOVES THIS COURT PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i), THE FIRST STEP ACT, AND ATTORNEY GENERAL WILLIAM BARR'S MEMO ON APRIL 3, 2020, FOR AN ORDER GRANTING THE "EMERGENCY MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)" to IMMEDIATELY RELEASE, PETITIONER ASSERTS HIS ELIGIBILITY TO THE COURT FOR THE FOLLOWING REASONS:

1) PETITIONER IS CURRENTLY AT F.C.I. ELKTON, ONE OF THE FACILITIES DEEMED TO BE CONTAMINATED WITH COVID-19 BY ATTORNEY GENERAL WILLIAM BARR, IN HIS MEMO ON APRIL 3, 2020. WHERE HE MANDATED THE IMMEDIATE HOME CONFINEMENT RELEASE FOR ALL INMATES ELIGIBLE AT THE THREE LISTED FACILITIES. THE B.O.P. ADMITTED TO THE COURTS ABOUT HAVING USED ONLY "37" TEST KITS OUT OF "80" TOTAL. THAT LEAVES ONLY "43" ON HAND. FOR GOOD REASON, AT LEAST "6" CONFIRMED DEATHS HAVE OCCURRED AT F.C.I. ELKTON, "50" CONFIRMED INMATES HAVE CONTRACTED THE VIRUS AND AT LEAST 15 STAFF MEMBERS. "37+" INMATES HAVE BEEN HOSPITALIZED AND "12+" HAVE BEEN PLACED ON RESPIRATORY BREATHING VENTILATORS TO HELP SURVIVE. IT'S ONLY A MATTER OF TIME BEFORE SEVERAL MORE ARE TO COME.

pg. 1

2) IT HAS BECOME IMPOSSIBLE AND IRREVERSIBLE FOR PETITIONER'S INSTITUTION TO CONSTITUTIONALLY IMPOSE THEIR DUTY TO ASSUME RESPONSIBILITY FOR HIS SAFETY AND GENERAL WELL BEING FOR THE REMAINDER OF HIS SENTENCE.

3) MEDICAL STAFF ARE UNDEREQUIPPED, LACK TRAINING, UNDERSTAFFED, UNDER-PREPARED, LACK THE KNOWLEDGE REGARDING THIS COVID-19, AND LACK THE PROPER PROTOCOL TO MAINTAIN THE SAFETY OF THE PETITIONER. THEY ARE NOT RECEIVING ENOUGH TEST KITS.

4) THE LOCAL HOSPITALS ARE OVERPACKED. THE LOCAL TOWN'S ARE PROTESTING DAILY AGAINST ACCEPTING MORE INMATES THAT HAVE BECOME DANGEROUSLY LOW IN OXYGEN LEVELS AND REQUIRE VENTILATORS.

5) INMATES ARE BEING NEGLECTED BY STAFF OF THEIR SYMPTOMS OF COVID-19 SUCH AS COUGHING, SHORTNESS OF BREATH, FEVER, COLD SWEATS, LUNG-PAINS, EVEN LOSS OF CONSCIOUSNESS, ONLY TO BE DIRECTED BACK TO THEIR UNITS (164 CAPACITY), THEN EVENTUALLY BECOME "put" ON VENTILATORS OR CARTED TO THE HOSPITALS AFTER THE VIRUS HAS PROGRESSED TO CRITICAL CONDITIONS. AND THOSE THAT TELL THE OFFICERS THAT THEY ARE EXPERIENCING SOME OF THESE SYMPTOMS, ARE THEN MADE TO SELF-QUARANTINE AND BASICALLY TREATED DISCIPLINARY-LIKE CONDITIONS.

6) STAFF HAVE INTERMITTENLY STOPPED TAKING TEMPERATURES Everyday, twice-A-DAY, FROM UNITS TO ISOLATE ANY INFECTED INMATE, AND ARE ACTIVELY MIXED THOSE INFECTED WITH THOSE WHOM ARE NOT INFECTED. No daily health checks were performed for a period in excess of one week ending on or around April 20, 2000 2020.

7) UNITS OF "164" MAX CAPACITY, FILLED WITH INMATES ARE FORCED TO CRAM AND RUSH THROUGH COMPACT CORRIDORS ROUGHLY 3½ feet or 2-PERSON WIDE, FOR 5 MINUTE MOVES TO GO TO MAINLINE TO PICK UP OUR MEALS AND BACK. DURING WHICH, OTHER UNITS ARE ALSO ABLE TO INTERACT WITH OTHER INMATES, DUE TO LACK OF ENFORCEMENT OF THE "CDC" RECOMMENDATIONS, THE PRESIDENT STATE EMERGENCY ADDRESS, AND REGULAR SOCIAL-DISTANCING, AND THE LACK OF OFFICERS ON DUTY.

8) PETITIONER'S CASE MANAGER AND COUNSELOR HAVE BEEN ABSENT SINCE APRIL 3, 2020. THE WARDEN WAS ON NATIONAL TV STATING "I DO NOT BELIEVE IN HOME-CONFINEMENT/COMPASSIONATE RELEASE" AND THEREFORE WAS SAID TO BE RETIRED EARLY FROM THE B.O.P., THE WARDEN BEFORE THIS HAS BEEN UNREACHABLE SINCE THE MIDDLE OF MARCH 2020. THE CURRENT ACTING WARDEN HAS NOT ANSWERED TO A FORMAL REQUEST FOR REVIEW. STAFF HAVE STATED " THEY ARE NO LONGER

PROCESSING "HOME-CONFINEMENT OR COMPASSIONATE RELEASE PAPERWORK, NOR WILL THEY DIRECT PETITIONER TO ANY PROPER PAPERWORK OR ASSISTANCE OTHER THAN "SEEK OUT AN ATTORNEY."

9) AS PER §3582(c)(1)(A)(i) - ("UPON MOTION OF THE DEFENDANT, AFTER THE DEFENDANT HAS FULLY EXHAUSTED ALL ADMINISTRATIVE RIGHTS TO APPEAL A FAILURE OF THE B.O.P. TO BRING A MOTION ON THE DEFENDANTS BEHALF") NO STAFF CAPABLE OF PROCESSING ANY "EXHAUSTIVE" ADMINISTRATIVE RIGHTS, BP-8, BP-9, BP-10, BP-11, COMPASSIONATE RELEASE, AND HOME-CONFINEMENT HAS BEEN AVAILABLE TO PETITIONER SINCE APRIL 3, 2020.

10) THE UNION FOR CORRECTIONAL OFFICERS HAVE FILED A LAWSUIT AGAINST THE PETITIONER'S FACILITY. THE "ACLU" HAS FILED A LAWSUIT AGAINST PETITIONERS FACILITY ON BEHALF OF INMATES.

11) SAFETY PRECAUTIONARY MEASURES ARE BEING NEGLECTED OR NOT INSTITUTED OR TAKEN SERIOUSLY. SEVERAL STAFF "CONTINUE" TO ASSERT THE VIRUS IS NOT SERIOUS OR A PROBLEM, HAVE DOWN PLAYED THE SEVERITY OF THE SITUATION, "CONTINUE" TO COVER UP THE CONTAMINATION, AND UNDERMINDING THE GRAVITY OF PETITIONER'S SAFETY OR CIRCUMSTANCE. THEY "CONTINUE" TO YELL AT INMATES WHO TRY TO TELL THEIR FAMILY THE FACTS OVER THE PHONE OR TELL THEIR FAMILY TO GO SPEAK TO AN ATTORNEY OR THE NEWS ABOUT THE SITUATION. SOME EVEN HAVE A 45 MINUTE ALTERCATION WITH AN OFFICER ON DUTY. PUTTING UP INFO ON COVID-19 BUT NOT ENFORCING ANY OF IT.

12) FACILITY HAVE BEEN DISREGARDING PROTOCOL BY DISPLAYING HAZARDOUS PRACTICES SUCH AS COMING TO WORK SICK, SEARCHING MULTIPLE PEOPLE WITHOUT ACTUAL CHANGE OF GLOVES OR DISINFECTANT USED.

13) PETITIONER AND INMATES ARE BEING DENIED TEST KITS DAILY, TO PROPERLY ADDRESS THE DANGER OF EACH UNIT AND COMPOUND, TO HELP STOP THE ACTIVE MIXING OF THE VIRUS. UP UNTIL APRIL 2, 2020, INMATES WERE DENIED UTILIZATION OF ANY P.P.E., PROTECTING THEIR FACE. STAFF WOULD CONFISCATE MASKS OR CLOTHES FROM INMATES ATTEMPTING TO PROTECT THEMSELVES. AN INMATE ON APRIL 1, 2020 WAS CITED A "218" SHOT AND WAS TAKEN TO THE S.H.U. FOR REQUESTING PROPER MASK P.P.E., STATING "HE WOULD NOT RETURN TO HIS UNIT FOR CONCERN OF OTHER INMATES COUGHING AND SHOWING THE SYMPTOMS OF COVID-19." PETITIONER IS ASSERTING WITHIN HIS CURRENT UNIT, OTHERS ARE SHOWING SYMPTOMS OF COVID-19.

/P3

14) No hand sanitizer is in stock at commissary. They tried to take commissary away from us in retaliation to filing with the "ACLU" lawsuit and for filing within the courts for assistance. No envelopes, no paper, no pens, no food. Only hygiene. And we were told by a kitchen "CO" they ordered over $70,000 worth of commissary. They gave us a OTC restricted list. There was an "hour" period where the whole compound started to riot. No sanitizer is being supplied to the inmates. The toiletries they provide is not enough to clean your dishes, do your laundry, wash up in the shower, and wash your hands several times a day - everyday. We are given 4 rolls of toilet paper, 2 barely functional Bic single razors, 2 maximum security all-in-one 4 fl. oz bottles of "soap", and 2 0.85 tubes of toothpaste. And you have to make sure that this stretches for 2 weeks. Since being on lockdown, all work has come to a halt and no one but essential personnel is paid, when it comes to those who rely on those jobs to pay for "Actual" shampoo, shave gel, deodorant, soap, laundry detergent, the 2 weeks supplied does not last but a week.

15) The facility has failed to properly screen the inmates and staff to prevent the spread of the Covid-19 from entering the facility, putting every high risk inmate, including the petitioner's life at-risk. Self surrender's and new arrests are not being tested as they come in. New arrivals have been assigned to the petitioner's unit as recently as 21 April 2020.

16) Housing units are overpopulated. Petitioner's housing unit has 154/160 total inmate capacity, to which are forced to quarantine in overcrowded proximity, with 2-3 man open-cubes, that have no door to isolate with, and about 7 feet between top bunks between neighbor cubes. These "154" inmates that petitioner is forced to be quarantined with, are limited to only 1 working washing machine to disinfect our clothes, a confined restroom, 4 phone stations, 4 computer stations (1 legal, 3 personal), and the limited walking space, to which forces interaction and the high risk of contamination, inmates around petitioner cough without covering their mouths, do not wash their hands, or report their symptoms to the staff in fear of retaliation, to which are all hazardous to petitioner. The S.H.U. is full with either disciplined or quarantined inmates. Sick inmates are being housed in inadequate/makeshift housing in the visitation room, and Unicor. Those chosen to be on "14" day quarantine to be sent home are housed within the chapel and recreation's gym. Some of these people were pulled out and quarantined for "14" days to leave to home-confinement only to be told "Go back to your unit".

17) As of April 13, 2020, Petitioner's healthy 43 year old friend and inmate at F.C.I. Elkton, Alvin Turner, had been taken off of ventilation. He was extremely sick as of April 6, 2020. He went on ventilator on Friday the 10th of April, 4 days after he needed to be put on it. Saturday, the 11th of April, he was basically brain dead. His wife was called and told she had 24 hours to arrive before they pulled him off the ventilator. He was mishandled, misdiagnosed, and unable to be properly and constitutionally provided adequate medical attention or safety for his well being.

18) Petitioner has pre-existing CDC-verified high risk underlying health conditions. They are: Hypertension (treated by lisinopril); obesity (which is not helped by the total lack of recreation time); childhood asthma

Petitioner has a family history of: Asthma, diabetes, hypertension, and obesity

Therefore Petitioner is eligible.

19) Petitioner is maintained a minimum recidivism by re-educating himself. He is also maintained a minimum disciplinary record while being incarcerated at F.C.I. Elkton.

20) Petitioner has submitted multiple electronic copouts since 16 April, 2020 to his Case Manager, Counselor, Secretary, Unit Manager, Assistant Wardens, and the Warden regarding his release plan for home-confinement/compassionate release, for immediate release per "CDC" recommendations for F.C.I. Elkton, to which he has received no response to. The entire unit team except the Unit Manager (who is downstairs and not easily accessible due to the lockdown) and the Unit Secretary, has yet to come to work or to enter the facility, being accessible to the inmates within the unit, since April 3, 2020.

21) Petitioner will self-quarantine maintaining his safety as long as necessary, practice safe social-distancing, to avoid contamination or the spreading of COVID-19 under home-confinement.

22) PETITIONER HAS AN IMMEDIATE HOME-CONFINEMENT RELEASE PLAN TO WHICH "Lisa Layman" WILL BE HIS LEGAL GUARDIAN, AND WOULD PICK THE PETITIONER UP AT THE FACILITY WITHIN "24" HOURS AFTER GRANTING THIS MOTION. PETITIONER WOULD RESIDE WITH HIS LEGAL GUARDIAN AT THE FOLLOWING Address: 1118 Piedmont Road, New Market, TN 37820    (PHONE #)(865)621-2455    UNDER SUPERVISED RELEASE OR ANKLE-MONITOR. PETITIONER WILL ATTEMPT LEGAL ESSENTIAL EMPLOYMENT/CLAIM DISABILITY WITH Local utility or manufactory companies by military experience. HE PLANS TO CONTINUE HIS TRANSITION OF POSITIVE IMPACT AND MINIMUM RECIDIVISM BY MAINTAINING GOOD CONDUCT WITHIN THE COMMUNITY. PETITIONER'S RESIDENCE HAS A HOME LINK OR A CELL TETHER ACCESS FOR MONITORING AND IS CAPABLE OF IMMEDIATE ANKLE-MONITOR RELEASE. PETITIONER HAS YET TO DISPLAY SYMPTOMS AND IS ABLE TO RE-ENTER SOCIETY IMMEDIATELY. PETITIONER'S RESIDENCE IS COVID-19 FREE. PETITIONER ACCEPTS ALL TERMS SPECIAL OR OTHER WHILE ON RELEASE.

23) ATTORNEY GENERAL WILLIAM BARR'S DIRECTIVE FOR IMMEDIATE HOME-CONFINEMENT DID "NOT EXEMPT" INMATES FROM "ANY" CRIME DIRECTLY. THE DIRECTIVE GRANTED ELIGIBILITY FOR ANY INMATE AT-RISK TOWARDS COVID-19, FOR IMMEDIATE HOME-CONFINEMENT. THIS HONORABLE COURT MUST RESPECTFULLY ACCEPT PETITIONER'S INTERPRETATION OF THE DIRECTIVE AS THE LAWFUL MEANS OF ENFORCEMENT, THEREFORE PETITIONER IS ELIGIBLE, DUE TO HIS RISK. ((U.S. v. Sawicz, 08-CR-287, ED NY, 4/10/20))

24) We, AS A society are currently under extraordinary times of survival, to which is contingent on Self-Preservation resorted to social-distancing. The COVID-19 is contractable by anyone, from infants to the elderly, with indefinitive data to predict the results. Medical experts such as DR. Anthony Fauci, DIRECTOR of the national Institute of allergies and infectious disease at the national institutes of health, and the U.S. Surgeon General Jerome Adams, State - The virus does not only endanger the elderly or sick, But even the healthy are at risk to potential death, Permanent BRAIN or PULMINARY damage. Over 24,000 Americans Have died due to COVID-19, AND THAT DEATH TOLL IS ONLY THE Beginning. Medical experts are advising and urging everyone to self-quarantine and SOCIAL-DISTANCING TO PROTECT OURSELVES AND OTHERS. WE HAVE YET TO FULLY UNDERSTAND THIS DANGEROUS AND NEW VIRUS, TO WHICH MAKES FOR THE NEED FOR PROPER HANDLING AND Advisement from MEDICAL even more IMPERATIVE, AND NOW F.C.I. Elkton HAS BECOME AN EPICENTER FOR THE OUTBREAK IN THE B.O.P.. Attorney GENERAL BARR HAS DEEMED THE VIRUS POTENTIALLY DANGEROUS TO Anyone, The President of the United States has ENACTED A NATIONAL STATE OF emergency for the entire country for the first time in history. These Are DANGEROUS AND EXTRAORDINARY Times. THE ABILITY TO SELF-QUARANTINE AND PRACTICE PROPER "CDC" SOCIAL DISTANCING RECTIFY THE REASONING TO WHY HOME-CONFINEMENT IS THE CONSTITUTIONAL FORM OF IMPRISONMENT FOR THE PETITIONER DURING THIS TIME. REQUIRING AN IMMEDIATE MODIFICATION IN SENTENCE.

25) "The circumstances faced by our prison system during this highly contagious, potentially fatal global Pandemic are unprecedented. It is no stretch to call this environment, extraordinary and compelling and we well believe that, should we not reduce defendant's sentence, defendant has a high risk and likelihood of contracting Covid-19 from which he would "Not be expected to Recover" USSG § 1B1.13 "No Rational is more Compelling or Extraordinary" ((see US v. Foster, Case No: 1:14-CR-324-02, MD PA, 4/3/20))

26) PETITIONER'S SENTENCE OF "88" MONTHS, HAS BECOME A DE FACTO DEATH SENTENCE.

WHEREFORE, based on the above, pursuant to 18 U.S.C. §3582(c)(1)(A)(i) and Attorney General William Barr's Directive, extraordinary and compelling reasons warrant such a reduction. This court, may waive the exhaustion requirement, "Even where [Administrative] exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." WASHINGTON V. BARR, 925 F.3d 109, 118 (2d Cir 2019). "A Court may waive an administrative exhaustion requirement where [Exhaustion] would be futile... where the administrative process would be subject [the person seeking relief] to undue prejudice." Further, "Undue delay, if it in fact results in catastrophic health consequences, "Can justify waiving an administrative exhaustion requirements for any of these three reasons." Id at 120-21. (See also U.S. v. Brannon,)(4:15-CR-80-01, SD TX, 5th Cir 2020). (ROSS V. BLAKE) "An Administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple deadend with prison officers unable or consistently unwilling to provide any relief to aggrieved inmates" [195 L. Ed. 2d 119] Petitioner need not exhaust unavailable remedies under Administrative Remedy Requirements for statute. Kyle Joshua Cotten _____, urges and pleads to this Honorable Court to immediately intervene, and grant an Order for immediate home-confinement release. Petitioner stresses the urgency to rule on this motion due to any unnecessary delay puts Petitioner's life in jeopardy.

Respectfully submitted on 5th day of May, 2020.

x [signature]
Kyle Joshua Cotten
#26010-052
FCI Elkton
P.O. Box 10
Lisbon, OH 44432

pg 7

## CERTIFICATE OF SERVICE

I, Kyle Joshua Caton, HEREBY CERTIFY that a true and correct copy of an "EMERGENCY MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)" has been mailed postage prepaid on this day of May, 5, 2020, to the following parties;

US District Court
Northern District of NY
James T Foley Courthouse
Ste 509
~~Albany, 445 Broadway~~
Albany, NY 12207

~~Derrick Hogan~~
~~Tulley-Rickney~~
~~441 New Karner Rd~~
~~Albany, NY 12205~~

x _[signature]_
Kyle Joshua Caton
# 26010-052
FCI Elkton
P.O. Box 10
Lisbon, OH 44432

Kyle Caton 26016-052
FCI Elkton
P.O. Box 10
Lisbon, OH 44432

KNOXVILLE TN 377
05 MAY 2020 PM 3 L

U.S. District Court
Northern District of NY
James T. Foley Courthouse
Ste. 509
445 Broadway
Albany, NY 12207

U.S. DISTRICT COURT
JOHN M. DOMURAD, CLERK
MAY 11 2020
RECEIVED