IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    1:19-CR-245 (TJM) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KYLE CATON** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR A REDUCTION IN SENTENCE

Defendant Kyle Caton, a 32 year-old man who has served approximately 15 months of an 88-month sentence, asks the Court either to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), or to release him to home confinement.  The government opposes his motion, because there are no extraordinary and compelling circumstances justifying release, and the CARES Act does not give the Court authority to release the defendant to home confinement.

### I.    Background and Procedural History

On June 25, 2019, pursuant to a written plea agreement and Rule 11(c)(1)(A), the defendant pled guilty to a one-count Information which charged Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) and 2256(8)(A).  (Dkt. No. 19).  This offense carried a five-year mandatory minimum term of imprisonment.  In the plea agreement, the defendant waived his right to appeal his conviction or a sentence of 168 months or less.  (Dkt. No. 19 ¶ 7).  He also admitted downloading child pornography from the internet, including from a for-profit website.  *Id.* ¶ 5.  Among the 433 files containing child pornography found on the defendant's computer, were pornographic images of a girl who appeared to be approximately

three to four years old, and images of a prepubescent girl being subjected to bestiality and sadomasochistic conduct.  *Id.*

On November 13, 2019, the Court sentenced the defendant to an 88-month term of incarceration, with a 15-year term of supervised release to follow.  (Dkt. No. 30).  In support of this sentence, the Court noted its concern about one particular item in the defendant's child pornography collection:  a manual containing instructions for engaging in sexual intercourse with "very young girls ... safely."  (*See* Dkt. No. 26 ¶ 17).  As noted in the Presentence Report, this document featured images of an adult male or males vaginally penetrating very young girls and inserting their fingers into young girls' vaginas and anuses, accompanied by descriptions.  *Id.*  In one, the author describes how he started physically preparing a girl to have sex when she was four and a half years old.  *Id.*

The defendant is an inmate at Federal Correctional Institution (FCI) Elkton, with a current projected release date of June 12, 2025.  *See* BOP Online Inmate Locator (https://www.bop.gov/inmateloc), last visited June 25, 2020.  While the timeline and process through which the defendant requested home confinement or compassionate release is unclear, FCI Elkton denied the defendant's request on April 29, 2020.  (*See* Exh. 1).  On May 11, 2020, the defendant filed a motion seeking release to home confinement and/or compassionate release due to the COVID-19 pandemic.

FCI Elkton was the subject of a class action brought by inmates concerned about the spread of COVID-19 within that facility.  As a result of this action, on April 22, 2020, a United States District Court in the Northern District of Ohio ordered BOP to identify members of a "medically vulnerable" subclass based on CDC Guildelines that included "all Elkton inmates 65 years or older and those with documented, pre-existing medical conditions, including heart, lung,

kidney, and liver conditions, diabetes, conditions causing a person to be immunocompromised (including, but not limited to cancer treatment, transplants, HIV or AIDS, or the use of immune weakening medications), and severe obesity (body mass index of 40 or higher)." *Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *6 (N.D. Ohio Apr. 22, 2020), *enforcement granted,* No. 4:20-CV-00794, 2020 WL 2542131 (N.D. Ohio May 19, 2020), and *vacated,* No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).  In response, BOP filed a list of medically vulnerable inmates with the court.  (*See* Exh. 2).  The defendant is not on that list.  *See id.*

In connection with the lawsuit, both the Northern District of Ohio and the Sixth Circuit considered at length BOP and FCI Elkton's efforts to limit the spread of COVID-19.  The Sixth Circuit noted:

> The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton.  Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks.  The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing.  The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *8 (6th Cir. June 9, 2020) (vacating the district court's preliminary injunction).[1]  BOP has since succeeded in expanding COVID-19 testing at FCI Elkton.  As of June 25, 2020, BOP had conducted 2230 COVID-19 tests on inmates at the facility, of which 688 were positive and 17 were pending.  *See* BOP COVID-19

---

[1] More detail about BOP's efforts to limit the spread of COVID-19 is available here:  BOP Implementing Modified Operations, (https://www.bop.gov/coronavirus/covid19_status.jsp), last accessed June 25, 2020.  BOP also notes that it "has begun additional testing of asymptomatic inmates to assist in slowing transmissions within a correctional setting."  BOP COVID-19 Cases, (https://www.bop.gov/coronavirus/index.jsp), last accessed June 25, 2020.

Web Page, (https://www.bop.gov/coronavirus), last visited June 25, 2020.[2]  FCI Elkton's current active cases number 125 among inmates and 7 among staff, with 572 inmates and 42 staff members having recovered.  *Id.*

While FCI Elkton is among the BOP facilities most affected by COVID-19, the defendant is 32 years old with minor health issues, which do not materially heighten his risk of contracting COVID-19 or developing severe complications.  The defendant has a body mass index of 30.0-30.9, which makes him mildly obese.  (Exh. 3 at 54).  He has anxiety and depression for which he takes Venlafaxine, and hypertension that is well-managed with hydrochlorothiazide and Lisinopril.  (Exh. 3 at 4).  According to his medical records, the defendant's blood pressure was most recently tested in January, when it was 122/78.  (Exh. 3 at 39).  BOP also prescribes the defendant a nasal spray to treat allergic rhinitis.  (Exh. 3 at 4).  There is no evidence in the defendant's BOP health records that the defendant displayed symptoms of COVID-19 or that he has any serious health conditions.  *See* Exh. 3.  On May 20, 2020, BOP Health Services ordered a COVID-19 test for the defendant, who was asymptomatic.  (Exh. 3 at 1).  This test was negative for the virus.  (Exh. 3 at 60).

## II.   Analysis

The defendant asks the court to order his immediate release, despite the seriousness of his offense, the time that remains on his sentence, as well as his youth, relative good health, and recent negative COVID-19 test result.  The Court lacks the authority to order the defendant released to home confinement, and the defendant is ineligible for compassionate release.

---

[2] BOP notes that the number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once.  *Id.*

**A.  The Court Lacks the Authority to Release the Defendant to Home Confinement**

This Court has no authority to order the defendant's transfer to home confinement under the CARES Act—or, for that matter, any other statute—so the defendant's motion must be denied.  The CARES Act, which was enacted in light of the COVID-19 pandemic, expanded the amount of time a prisoner may spend in home confinement, which is otherwise capped at "the shorter of 10 percent of the term of imprisonment of th[e] prisoner or 6 months."  18 U.S.C. § 3624(c)(2).  The Act states: "if the Attorney General finds that emergency conditions will materially affect the functioning of [the BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement."  CARES Act § 2003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (2020).  The Attorney General made the requisite finding on April 3, 2020, *see* Memorandum From the Attorney General to the Director of the Bureau of Prisons (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited May 22, 2020), and the Director of the BOP is therefore authorized to transfer an inmate to home confinement "as the Director deems appropriate."  CARES Act § 2003(b)(2).

This Court, by contrast, has "no authority … to order that a prisoner be placed on home confinement."  *United States v. McCann*, No. 5:13-52, 2020 WL 1901089, at *3 (D. Kan. April 17, 2020); *see also United States v. Clemens*, Case No. 3:14-CR-237 (TJM), Dkt. 130, at 2 (N.D.N.Y. June 25, 2020) (McAvoy, J.) ("The Court does not have the authority to designate Clemons's place of incarceration or to order BOP to place Clemons in home confinement" (citations omitted)); *United States v. Camacho*, No. 2:11-CR-00085-01, 2020 WL 2573355, at *1 (W.D. La. May 21, 2020) ("[A]s the government notes and several courts have recently recognized, the district court has no authority to order home confinement under the CARES

5

Act." (collecting cases)); *United States v. Smith*, No. 8:17-cr-412-T-36AAS, 2020 WL 2512883, at *3 (M.D. Fla. May 15, 2020) ("[T]he Court has no authority to direct the [BOP] to place [the defendant] in home confinement because such decisions are committed solely to the BOP's discretion."); *United States v. Black* , No. 2:12-cr-263-3, 2020 WL 2213892, at *1 (S.D. Ohio May 7, 2020) ("The BOP has the sole authority to decide whether home confinement under the CARES Act is appropriate." (collecting cases)).  The defendant's motion "for immediate release to home confinement" must, accordingly, be denied.

### B.  The Defendant is Ineligible for Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c) authorizes district courts to "reduce [a defendant's] term of imprisonment" on a defendant's motion if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds, "extraordinary and compelling reasons warrant such a reduction," and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).[3]  Thus, to reduce the defendant's sentence, the Court (i) "must find that 'extraordinary and compelling reasons warrant' release," (ii) "consider the factors set forth in 18 U.S.C. § 3553(a)," and (iii) "find that release is consistent with the Sentencing Commission's policy statements."  *United States v. Johnson*, No. 98-cr-860 (ARR), 2020 WL 2124461, at *1 (S.D.N.Y. May 5, 2020).

The Court need only look to the "extraordinary and compelling reasons" requirement to deny the defendant's motion.  The Sentencing Commission promulgated U.S.S.G. § 1B1.13,

---

[3] There are other bases to reduce a sentence under § 3582, but none apply to the defendant because (i) he is not 70 years old, and (ii) the applicable sentencing range under the U.S. Sentencing Guidelines has not been lowered.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii) and (c)(2).

which defines "extraordinary and compelling reasons."  *See United States v. Pinto-Thomas*, __ F. Supp. 3d __, No. 18-cr-579 (JSR), 2020 WL 1845875, at *2 (S.D.N.Y. April 13, 2020) ("This Court therefore joins at least two others in this District in concluding that it has discretion to grant compassionate release motions on grounds that are distinct from, but of similar magnitude and importance to, those specifically enumerated in Application Note 1 to U.S.S.G. § 1B1.13."). The defendant is not subject to any of the applicable circumstances:  (i) he is *not* "suffering from a terminal illness," or "another ailment that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," (ii) he is *not* "at least 65 years old," "experiencing a serious deterioration in physical or mental health because of the aging process," and has *not* "served at least 10 years or 75 percent of his sentence, whichever is less," (iii) and he does *not* have "minor children" or an "incapacita[ted] spouse or registered partner" for which he is "the only available caregiver."  U.S.S.G. § 1B1.13 cmt. n.1.

Although the COVID-19 pandemic presents a serious threat to public health, "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances.  Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."  *United States v. Wright*, No. CR 16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020).  Section 1B1.13 does not contemplate a sentence reduction based on a pandemic or other issue that affects all of society.  Instead, it defines "extraordinary and compelling reasons" in narrow, individualistic terms.  *See* USSG § 1B1.13 app. note 1. Considered in these terms, the defendant's health conditions do not so seriously increase his risk of suffering severe COVID-19 complications that they constitute an extraordinary and

7

compelling reason for release. *See United States v. Mackenzie*, No. CR 13-10149-FDS, 2020 WL 2104786, at *2 (D. Mass. May 1, 2020) (holding that neither rhinitis nor hypertension that appear to be effectively controlled by medication "make [defendant] especially vulnerable to infection, let alone the kind of serious, debilitating impairment that would qualify as an extraordinary and compelling reason for release.").

Finally, the § 3553(a) factors—including the seriousness of the offense, the need to protect the public, and the need to promote respect for the law and provide just punishment— weigh in favor of the defendant's continued imprisonment. First, the defendant's crime supported the commercial trade in child pornography, which allowed others to profit from the sexual exploitation of children. It is therefore extremely serious. Second, the defendant's possession of a "how-to" guide to raping young children suggests that the defendant wanted to progress from pornography consumption to "hands on" conduct. He therefore presents a risk to the public if released. Third, if the defendant is released, he will have served just 15 months of an 88-month sentence, for a crime that has a 60-month mandatory minimum. Such a short sentence for such a serious crime is inconsistent with the need to provide just punishment and to promote respect for the law.

## III.   Conclusion

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

GRANT C. JAQUITH
United States Attorney

8

By:      */s/ Shira Hoffman*
         Shira Hoffman
         Assistant United States Attorney
         Bar Roll No. 700507