**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **v.**                               **1:19-CR-245**

**KYLE CATON,**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.     INTRODUCTION**

      Before the Court is Defendant Kyle Caton's motion to be placed on home

confinement or to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Dkt. No.

35.  The basis for the motion is Defendant's fear of contracting COVID-19 at the

correctional facility where he is incarcerated.  *See id.*  The government opposes the motion.

Dkt. No.  41.  For the reasons that follow, the motion is denied.

**II.    BACKGROUND**

      On June 25, 2019, pursuant to a written plea agreement and Rule 11(c)(1)(A), Caton

pleaded guilty to a one-count Information which charged Receipt of Child Pornography, in

violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) and 2256(8)(A).  Dkt. No. 19.  This offense

carried a five-year mandatory minimum term of imprisonment.  As set forth in the plea

agreement, Caton admitted downloading child pornography from the internet, including from

a for-profit website.  *Id.* ¶  5.  Among the 433 files containing child pornography Caton

1

admitted were on his computer was an image of a toddler-aged girl performing oral sex on an adult male, a pornographic image of a girl who appeared to be approximately three to four years old, and images of a prepubescent girl being subjected to bestiality and sadomasochistic conduct. *Id.*   Caton also admitted that he had on his hard drives a manual containing instructions for engaging in sexual intercourse with "very young girls ... safely." *Id.*  This document featured images of an adult male or males vaginally penetrating very young girls and inserting their fingers into young girls' vaginas and anuses, accompanied by descriptions.  *Id.*  In one part of the manual, the author describes how he started physically preparing a girl to have sex when she was four and a half years old.  *Id.*  The Presentence Investigative Report ("PSR") described these files found on Caton's computer and hard drives.  *See* Dkt. No. 26,  ¶¶ 16-17.

On November 13, 2019, the Court sentenced Defendant to an 88-month term of incarceration, with a 15-year term of supervised release to follow.  Dkt. No. 30.  At present, Caton is an inmate at Federal Correctional Institution Elkton ("FCI Elkton"), and the government indicates he has served approximately 15 months of his 88-month term of incarceration.  He has a current projected release date of June 12, 2025. *See* BOP Online Inmate Locator (https://www.bop.gov/inmateloc) (accessed 06/26/20).  Caton notes that FCI Elkton is one of the federal correctional facilities identified in U.S. Attorney General William Barr's April 3, 2020 memorandum as experiencing significant levels of COVID-19 infection, and the Attorney General instructed the Director of the Bureau of Prisons, "where appropriate," to move vulnerable inmates to home confinement.  *See* 04/03/20 Barr Memo., "*Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*,"

https://www.justice.gov/file/1266661/download (accessed 06/26/20). Caton argues that FCI Elkton has taken inadequate measures to curb the transmission of COVID-19 among the prisoners, and that he is at increased risk of severe illness if he contracts the virus because he has hypertension, is obese, and had childhood asthma. Dkt. No. 35. The Court interprets Caton's motion as asking the Court to order he be placed on home confinement, or to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

III.   **ANALYSIS**

    **a. Home Confinement**

    Once a defendant is sentenced to a term of incarceration, the Federal Bureau of Prisons ("BOP") designates the place of incarceration for each federal prisoner, 18 U.S.C. § 3621(b), and is authorized to place a prisoner on home confinement under certain conditions. *See* 18 U.S.C. § 3624(c)(2)("The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."). In his April 3, 2020 memorandum, U.S. Attorney Barr invoked a provision of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") that allows the BOP to expand the amount of time a prisoner may spend on home confinement, which is otherwise capped at "the shorter of 10 percent of the term of imprisonment of th[e] prisoner or 6 months." 18 U.S.C. § 3624(c)(2). However, the authority to place an inmate on home confinement, whether under § 3624(c)(2) or the CARES Act, is exclusively vested in the discretion of the BOP and the Court lacks authority to order otherwise. *See* 18 U.S.C § 3624(c)(2)( authorizing BOP to place prisoners on home confinement); *United States v. Casado*, No. 19-CR-6156-FPG,

2020 WL 3410455, at *1 (W.D.N.Y. June 22, 2020)("The power to grant home confinement under the CARES Act is vested exclusively within the discretion of the BOP. The Court thus lacks authority to grant home confinement under the CARES Act.")(interior quotation marks and citations omitted); *see also United States v. Clemens*, Case No. 3:14-CR-237 (TJM), Dkt. 130, at 2  (N.D.N.Y. June 25, 2020) (McAvoy, J.) ("The Court does not have the authority to designate Clemons's place of incarceration or to order BOP to place Clemons in home confinement.")(citations omitted).  Thus, to the extent Defendant seeks an order directing BOP to place him on home confinement, the motion must be denied.

### b.  18 U.S.C. § 3582(c)(1)(A)

#### 1.  Extraordinary and Compelling Reasons

Under the relevant provision of 18 U.S.C. § 3582(c)(1)(A), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  Congress delegated authority to the Sentencing  Commission to "promulgat[e] general policy statements regarding [18 U.S.C. § 3582(c)(1)(A)]" and "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  The Sentencing Commission has listed four categories of extraordinary and compelling reasons in U.S.S.G. § 1B1.13 and the accompanying Application Notes.  Those categories include, as relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1(A).  "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)(citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")).

Defendant argues that the current health crisis in the United States exposes him to health risks and justifies granting his motion.  As the Third Circuit and other district courts have held, however, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by §3582(c)(1)(A)").  This does not mean that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). An inmate with a chronic medical condition that has been identified by the Centers for Disease Control and Prevention ("CDC") as elevating the inmate's risk of becoming seriously ill from COVID-19 may satisfy the standard of "extraordinary and compelling reasons" on the grounds that the chronic condition reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.  U.S.S.G. § 1B1.13,

cmt. n.1(A)(ii)(i).

Defendant argues that he is at increased risk of severe illness if he contracts the virus because he has hypertension, is obese, and had childhood asthma. Dkt. No. 35.  The government points out that Caton is 32 years old and argues that he has relatively minor health issues.  Caton's BOP medical records indicate that he has a body mass index of 30.0-30.9, which makes him mildly obese.  Gov. Exh. 3 at 54.  He has anxiety and depression for which he takes Venlafaxine, and hypertension that is well-managed with hydrochlorothiazide and Lisinopril.  *Id.* at 4.   Caton's blood pressure was most recently tested in January, when it was 122/78, *id.* at 39, which is a systolic reading in the slight elevated range and diastolic reading in the normal range.  Caton's medical records also indicate that BOP prescribes him a nasal spray to treat allergic rhinitis. *Id.* at 4.  Defendant fails to point to evidence in the medical records indicating any ongoing treatment for his childhood asthma.

Neither Caton's hypertension nor his rhinitis make him especially vulnerable to the COVID-19 virus such to amount to an extraordinary and compelling reason for release.  *See United States v. Mackenzie*, No. CR 13-10149-FDS, 2020 WL 2104786, at *2 (D. Mass. May 1, 2020) (holding that neither rhinitis nor hypertension that appear to be effectively controlled by medication "make [defendant] especially vulnerable to infection, let alone the kind of serious, debilitating impairment that would qualify as an extraordinary and compelling reason for release.").  Defendant does not argue that his anxiety and depression, or the medication that he takes for these conditions, make him especially vulnerable to the COVID-19 virus.   Thus, defendant fails to satisfy his burden of

demonstrating that these conditions and the medication he takes for them make him especially vulnerable to the COVID-19 virus such to amount to an extraordinary and compelling reason for release.  The same conclusion is reached for Caton's purported childhood asthma which apparently is not being currently treated.

The Centers for Disease Control and Prevention ("CDC") recently amended their guidance to indicate that people of any age "[h]aving obesity, defined as a body mass index (BMI) of 30 or above, [have an increased] risk of severe illness from COVID-19."  *See* CDC Website, *Coronavirus Disease 2019 (COVID-19).*[1]  Caton's BMI places him in this category, although barely so.  Despite that FCI Elkton was previously identified as a correctional facility experiencing significant levels of COVID-19 infection, the Sixth Circuit recently explained that the BOP "implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton,  . . .  including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks." *Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *8 (6th Cir. June 9, 2020).  Further, the government points out that the BOP has significantly expanded COVID-19 testing at FCI Elkton. *See* Gov. Mem. L. at 3-4 (citing BOP COVID-19  Web Page, https://www.bop.gov/coronavirus).  Indeed, Caton's BOP medical records indicate that on May 20, 2020, BOP Health Services ordered a COVID-19 test for him even though he was asymptomatic, Gov. Ex. 3 at 1, and the test was negative for the virus. *Id.* at 60.  In light of the steps that the BOP has taken to

---

[1]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (accessed 06/26/20).

Case 1:19-cr-00245-TJM   Document 45   Filed 06/29/20   Page 8 of 10

reduce the risk of COVID-19 spread at Elkton FCI, the Court finds that Caton's moderate

obesity, even in combination with his other documented medical conditions, fails to amount

to a serious, debilitating impairment that would qualify as an extraordinary and compelling

reason for release.  Thus, the § 3582(c)(1)(A) motion can be denied on this basis alone.

### 2.    Section 3553(a) Factors

In evaluating Defendant's motion, the Court is required to consider the factors set

forth in 18 U.S.C. § 3553(a) to determine whether Defendant can be released.  *See* 18

U.S.C. § 3582(c)(1)(A).  The factors listed in that section include:  "(1) the nature and

circumstances of the offense and the history and characteristics of the defendant"; "(2) the

need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote

respect for the law, and to provide just punishment for the offense; (B) to afford adequate

deterrence . . . ; [and] (C) to protect the public from further crimes of the defendant"; "(3) the

kinds of sentences available"; and "(6) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct[.]" 18

U.S.C. § 3553(a).

The § 3553(a) factors weigh against reducing Caton's sentence.  The government

relates that Defendant has served only 15 months of his 88-month sentence.  Releasing

Caton at this time would not be appropriate when considering the nature and circumstances

of the offense and the history and characteristics of the defendant, the need for the

sentence imposed, the seriousness of the offense, the need to promote respect for the law,

the need to provide just punishment for the offense, and the need to afford adequate

deterrence.  Further, a 15-month sentence would contravene the 60-month statutory

mandatory minimum and result in an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.  Finally, in light of Defendant's offense conduct and the fact that he possessed a manual instructing individuals on how to have sex with very young girls raises, a sentence reduction at this time would not protect the public from further crimes of the defendant.  Thus, the motion will be denied under the § 3553(a) factors.

### 3.      Danger to Persons or Community

Finally, the Court is to consider whether Defendant is a danger to the safety of any other person or to the community.  *See* U.S.S.G. § 1B1.13 ("[T]he court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a) . . .  the court determines that— (1) (A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement.").  Based on Defendant's offense conduct, the fact that he possessed a manual on how to have sex with very young girls, the lack of evidence that Caton has engaged in counseling or programs addressed to the wrongfulness of his conduct as he asserted he would at the time of sentencing, *see* Def. Sent. Mem. L., Dkt. No. 27, at 6 ("[Caton] is determined to engage in counseling and programs at whatever facility he is housed in order to learn from his mistakes and become a more productive member of society."), and the relatively short sentence he has served to date, the Court finds that Caton would be a danger to the community if released at this time.  The Court will therefore decline to reduce the sentence on this basis as well.

9

III.     **CONCLUSION**

For the reasons stated above, Defendant's motion to be placed on home confinement or for compassionate release, Dkt. No. 35, is hereby **DENIED**.

**IT IS SO ORDERED**

**DATED**:June 29, 2020

Thomas J. McAvoy
Senior, U.S. District Judge